IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| NANCY L. ZIFCHECK, | ) | CASE NO. 1:20-CV-01048 |
| | ) | |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION AND |
| SECURITY, | ) | ORDER |
| | ) | |
| | ) | |
| Defendant. | | |

**Introduction**

Before me[1] is an action under 42 U.S.C. § 405(g) by Nancy L. Zifcheck[2] seeking judicial review of the 2019 decision of the Commissioner of Social Security[3] that denied Zifcheck's 2014 applications for disability insurance and supplemental security income. The Commissioner has answered[4] and filed the transcript of the administrative

---

[1] The parties consented to my exercise of jurisdiction (ECF No. 13) and the matter was then transferred to me by United States District Judge Sara Lioi (ECF No. 14).
[2] ECF No. 1.
[3] ECF No. 11, Transcript at 12-22.
[4] ECF No. 10.

proceedings.[5] Pursuant to Judge Lioi's initial order,[6] as well as my own initial order[7] and

procedural order,[8] the parties have briefed their positions,[9] filed supporting fact sheets and

charts,[10] and met and conferred with the goal of reducing or clarifying the issues.[11] The

parties participated in a telephonic oral argument.[12]

For the following reasons, the decision of the Commissioner will be reversed and

the matter remanded.

## Facts

Zifcheck was 56 years old as of the alleged onset date of 2013.[13] As such, she was

an individual of advanced age who during the pendency of her claim changed categories

to be an individual of advanced age who is closely approaching retirement age.[14] She

received a bachelor's degree in interior design in 1979[15] and previously worked as a retail

manager in a paint store, a short-order cook, a cashier/checker, and salesclerk.[16]

---

[5] ECF No. 11.
[6] ECF No. 5.
[7] ECF No. 6.
[8] ECF No. 12.
[9] ECF Nos. 16 (Zifcheck brief, fact sheet and fact chart), 19 (Commissioner brief and fact chart), 20 (Zifcheck reply).
[10] ECF Nos. 16, Attachments 1,2 (Zifcheck fact sheet and fact chart), 19, Attachment 1 (Commissioner fact chart).
[11] ECF No. 22.
[12] ECF No. 26.
[13] Tr. at 673.
[14] *Id*.
[15] *Id*. at 87, 246.
[16] *Id*. at 673.

2

The ALJ found that Zifcheck has epilepsy; depressive, bipolar and related disorders; and anxiety and obsessive-compulsive disorders as severe impairments.[17] She also found that Zifcheck has non-severe impairments of degenerative disc disease and unspecified arthropathies.[18] She further determined that none of the impairments or combination of impairments met or medically equaled a listing.[19]

To that point, she noted that no treating or examining physician had found that any impairment satisfied a listing, and further that none of the B criteria of Listing 12.04 and 12.06 were met.[20] Specifically, the ALJ concluded that Zifcheck has a mild limitation in the area of understanding, remembering and applying information, while having moderate limitations in the areas of interacting with others; concentrating, persisting and maintaining pace; and adapting or managing oneself.[21] In addition, the ALJ found that the paragraph C criteria were not met because it was not shown that Zifcheck has only a minimal capacity to adapt to changes in her environment or to demands that were not already part of her daily life.[22]

Zifcheck was found to have the residual functional capacity (RFC) for a full range of work at all exertional levels with the following non-exertional limitations:

Never climbing ropes/ladders/scaffolds; never exposure to hazards (unprotected heights/dangerous machinery/commercial driving); and limited to simple, routine tasks but

---

[17] *Id*. at 668.
[18] *Id*.
[19] *Id*.
[20] *Id*. at 668-69.
[21] *Id*. at 669-70.
[22] *Id*. at 670.

not at a production rate pace; occasional interaction with the public; and occasional routine workplace changes.[23]

In formulating the RFC, the ALJ noted first that although Zifcheck has had epilepsy since childhood, a recent EEG, CT scan, and other neurological tests have been normal, and that Zifcheck has done well with medication.[24] The ALJ noted in addition that Zifcheck has been diagnosed with anxiety and depression at least since 2014, and was hospitalized twice in that regard, she now is being treated with five medications and counseling that have stabilized her mood.[25]

As to the opinion evidence, the ALJ first gave partial weight to the 2014 and 2015 opinions of consulting examining psychologist Dr. Ronald Smith, Ph.D., noting that the other evidence showed that Zifcheck would be more limited in adapting and managing herself than Dr. Smith opined, and that she would also be more limited in dealing with workplace pressures than Dr. Smith stated.[26] The ALJ then gave great weight to a 2017 state agency physical capacity assessment from Dr. Leon Hughes, M.D., while giving partial weight to 2014 state agency physical assessment opinions from Drs. Venkatachala Screenivas, M.D. and Leanne Bertani, M.D., both of which the ALJ found to be less

---

[23] *Id*. at 670.
[24] *Id*. at 671.
[25] *Id*.
[26] *Id*. at 671-72.

restrictive than the other evidence provided.[27] As to mental capacity opinions, the ALJ gave

partial weight to state agency opinions from 2014, 2015 and 2017.[28]

The ALJ then gave little weight to both an April 6, 2016 medical source statement

from Zifcheck's treating physician, Dr. K.C. Ravishanka, and an April 20, 2016 statement

from Dr. Ravishanka.[29] The ALJ concluded first that because there was no evidence that

Zifcheck has exertional limitations due to physical impairments, there was no basis for the

April 6 medical source statement detailing limitations on lifting and carrying or standing

and walking.[30] Moreover, the ALJ found that the evidence of Zifcheck doing well on her

medication did not support Dr. Ravishanka's statement that Zifcheck would be absent more

than three times per month due to seizures.[31] Finally, the ALJ noted that Dr. Ravishanka's

opinion in the April 20, 2016 statement that Zifcheck would be unable to work 30 hours

per week was a determination reserved for the Commissioner.[32]

Then, after finding that Zifcheck could not perform any of her past relevant work

and with the testimony of a vocational expert (VE), the ALJ found that Zifcheck could

perform the duties of laundry worker, packager and plastics laborer, and that there are jobs

in sufficient numbers in the national economy in all three occupations.[33]

---

[27] *Id*. at 272.
[28] *Id.*
[29] *Id*. at 672-73.
[30] *Id.*
[31] *Id*. at 673.
[32] *Id.*
[33] *Id*. at 674.

Accordingly, Zifcheck was found not disabled.[34]

## Issues on Judicial Review

Zifcheck presents two issues on judicial review:

> 1.      Whether the ALJ erred in her evaluation of [Dr. Ravishanka's] opinion where she failed to provide good reasons for the weight she gave to this opinion, ignoring Ms. Zifcheck's long-term treatment relationship with her neurologist?[35]
>
> 2.      Whether the ALJ's finding that a significant number of jobs existed in the national economy is supported by substantial evidence where the VE testified that the RFC so eroded the occupational base that it is numerically smaller than the occupational base remaining for a person who could perform the full range of sedentary and light unskilled work, an occupational base size that Social Security recognizes as disabling for a person of Ms. Zifcheck's age, education and work experience?[36]

## Analysis

### A.      Standard of Review

In the first instance, this matter is considered under the well-known substantial evidence standard, which need not be re-stated here. Further, as acknowledged by both sides,[37] the medical opinion evidence in this matter is also reviewed under the since-revised treating physician/good reasons standard.

### B.      Application of the Standard of Review

---

[34] *Id*. at 675.

[35] ECF No. 16 at 1.

[36] *Id*.

[37] ECF Nos. 16 at 5-6 (Zifcheck), 19 at 3-4 (Commissioner).

Zifcheck essentially contends initially that the ALJ did not examine Dr. Ravishankar's opinion with the degree of specificity required by the regulations and further maintains that that the ALJ failed to offer good reasons for the weight given to Dr. Ravishankar's opinion.[38] To analyze this issue I must initially review the history of Zifcheck's seizures as it appears in the record.

The medical source statement by Dr. Ravishankar dated April 6, 2016 is specifically concerned just with seizures, as all of the entries deal with that topic.[39] In that regard, Dr. Ravishankar notes in three separate responses that Zifcheck's seizures are "sporadic" and occur "unpredictabl[y]."[40] Critically, when addressing Zifcheck's response to treatment for this condition Dr. Ravishankar states that her response has only been "fair."[41] Of equal significance, when Dr. Ravishankar was asked to describe a "typical seizure pattern, including associated phenomena," the response directed the reader to a consult note of November 21, 2013.[42] That consult note describes a typical seizure as a 30-second inability to speak, followed by a blackout period, after which Zifcheck is confused and lethargic for several minutes to a half an hour.[43]

Prior to that statement by Dr. Ravishankar, the January 2015 opinion of Ronald Smith, Ph.D., contains a detailed description of Zifcheck's earlier seizure history,

---

[38] ECF No. 20 at 2-5.
[39] Tr. at 653.
[40] *Id.*
[41] *Id.*
[42] *Id.*
[43] *Id.* at 601.

beginning with petit mal seizures at age eight and grand mal seizures in her teens.[44]

Zifcheck told Dr. Smith in 2015 that "she averages the 'blacking out spells 'about once a

week" and that the "blacking out or petit mal seizures have been more frequent than they

used to be," although her doctor was looking into adjusting her medication.[45]

In the state agency opinion of October 31, 2017, which was here given great weight,

and was given after Dr. Ravishankar's April 2016 statement, a recitation of treatment

history by Dr. Ravishankar notes that on December 6, 2016 Zifcheck was reporting 2-3

minor seizures a month,[46] which would be consistent with the April 2016 opinion that she

would be absent 3 times per month. But Dr. Ravoshankar's note for March 7, 2017 -or

about three months later - indicates that Zifcheck had gone from 2-3 seizures a month to

"no seizures and [being] compliant with medications."[47] This exam notation from March

2017 further states that "seizure disorder doing well on Dilantin and Keppra and follow up

in six months."[48]

In sum, there does appear to be a period – roughly from her childhood up through

late 2016 - where Zifcheck was experiencing, according to multiple sources, at least 2-3

mild, or petit, seizures a month, all occurring sporadically, which is fully consistent with

Dr. Ravishankar's uncontested opinion as to how frequently Zifcheck would be absent from

work. But then there appears to be a change, beginning in early 2017, where the

---

[44] *Id*. at 632.
[45] *Id*.
[46] *Id*. at 763.
[47] *Id*.
[48] *Id*.

medications, now properly adjusted and taken by Zifcheck in compliance with instructions, resulted in the seizures either being greatly reduced or entirely eliminated, but with no new opinion as to absences from work.

This evidence, which was not analyzed by the ALJ, suggests that there may potentially be a closed period of disability. But such a finding can only be made on remand to considers the evidence cited above, as well as updated opinion evidence.

## Conclusion

For the reasons stated, the decision of the Commissioner is reversed and the matter remanded for further consideration according to the terms of this opinion.

IT IS SO ORDERED.

Dated: September 30, 2021                          s/William H. Baughman Jr.
                                                  United States Magistrate Judge